```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

Tyco Healthcare Group LP         :
d/b/a United States              :
Surgical, a division of Tyco     :
Healthcare Group LP              :
                                 :
    Plaintiff-Counterclaim       :
    Defendant                    :
                                 :
v.                               :    No. 3:04cv1702 (JBA)
                                 :
Ethicon Endo-Surgery, Inc.       :
                                 :
    Defendant-                   :
    Counterclaimant              :

**RULING ON PLAINTIFF'S MOTION FOR RECONSIDERATION [DOC. # 64]**

Plaintiff Tyco Healthcare Group L.P., also known as United States Surgical, ("Tyco") moves for reconsideration and clarification of this Court's construction of three disputed terms in the relevant patents.[1]  See Tyco Motion [Doc. # 64]. Specifically, Tyco seeks "clarification" of the Court's construction of the terms "cam slot" and "curved along the longitudinal axis" in the '286 Patent.  Tyco also seeks reconsideration of the Court's construction of the term "clamp

---

[1] The relevant patents are U.S. Patent No. 6,063,050 (the "'050 Patent") (entitled "Ultrasonic Dissection and Coagulation System") (Complaint [Doc. # 1] Ex. A), U.S. Patent No. 6,280,407 (the "'407 Patent") (also entitled "Ultrasonic Dissection and Coagulation System") (Complaint Ex. B), U.S. Patent No. 6,468,286 (the "'286 Patent") (entitled "Ultrasonic Curved Blade") (Complaint Ex. C), and U.S. Patent No. 6,682,544 (the "'544 Patent") (also entitled "Ultrasonic Curved Blade) (Complaint Ex. D).

1

member" in the '286 Patent.  Defendant Ethicon Endo-Surgery, Inc. ("Ethicon") opposes plaintiff's Motion.  At oral argument on June 26, 2006, the Court granted the Motion for Reconsideration.  The resulting reconsideration, and the Court's clarification and amendment of certain claims, are discussed below.

**I.   "Cam Slot" in the '286 Patent**

Tyco seeks clarification of the Court's construction of the term "cam slot" in the '286 patent (construed as "opening or groove that imparts motion to and guides the camming member"), querying why the construction omitted the words "the motion of" whereas those words were included in the constructions of "slots" in the related '050 and '544 patents.  The Court's constructions of "slots" in the '050 and '544 patents were: "openings or groves that impart motion to and guide <u>the motion of</u> the camming members" (<u>id</u>. at 11) (emphasis added), and "opening or groove (or pair of openings or grooves) that imparts motion to and guides <u>the motion of</u> the camming member" (<u>id</u>. at 30) (emphasis added).

Defendant Ethicon believes that the Court's construction of "cam slot" in the '286 patent "has essentially the same meaning as that for the similar terms in the 050 and 544 patents," Ethicon Opp. [Doc. # 66] at 12, but does not object to adding "the motion of" to the Court's construction of this claim term.

For the sake of consistency,  because the Court already concluded that use of the words "impart" and "guide" "accurately

2

describe the interaction between the camming members and the slots," <u>see</u> Claim Construction at 12, the Court amends its construction of the term "cam slot" in the '286 patent to: "opening or groove that imparts motion to and guides <u>the motion of</u> the camming member."

## II.   "Curved Along the Longitudinal Axis" in the '286 Patent

Next, plaintiff contends that while the Court adopted its construction for this claim term as "deviating from a straight line along the lengthwise dimension," <u>see</u> Claim Construction at 26, the Court should clarify its comments regarding this claim term because "the Court's opinion may be read to suggest an apparent misinterpretation that is inconsistent with this construction and will lead to confusion in applying this term for purposes of determining infringement and validity."  Tyco Motion at 2.  Tyco refers to the Court's comments that the cutting surface would not curve "side to side," but only "in the up or down direction."  Claim Construction at 25, 26 n.11.  Tyco argues that the claim language "is not so limiting" and that by suggesting "that the curve must be in the up or down direction, the Court appears to be doing precisely what it avoided doing in rejecting Ethicon's 'outwardly and downwardly' construction – importing a limitation that is not present in the claim language."  Tyco Motion at 2.  Ethicon opposes Tyco's motion, arguing that "[u]nder the guise of seeking 'clarification' of

[the Court's] construction, [plaintiff] seeks to change it entirely – and impermissibly – in a way that would eliminate an express limitation from the claim."  Ethicon Opp. at 5.

Because reconsideration is appropriate where a need is shown to correct a clear error of law, at oral argument the Court granted Tyco's motion for the purpose of considering whether the Court's comments in its Claim Construction improperly and impermissibly limited the claim term.  See Phillips v. AWH Corp., 415 F.3d 1303, 1323 (Fed. Cir. 2005) (while the specifications are properly consulted in order to ascertain the ordinary meaning to be given to claims terms, courts must "avoid importing limitations from the specification into the claims").

Plaintiff argues that the inventors did not intend to restrict the curved cutting surface claimed in the '286 patent to only embodiments that curve up or down, that the claim language "curved along the longitudinal axis" "does not restrict the blade geometry to being curved up or down" and that thus, the Court's suggestion that a cutting edge curved "side to side" would be curved "along the latitudinal axis," rather than "along the longitudinal axis," is incorrect.  Through the use of diagrams, plaintiff demonstrates that a cutting surface "curved along the longitudinal axis" of the instrument includes a cutting surface that extends along the lengthwise dimension of the instrument – an extending line, rather than a plane – whether it curves up,

4

down, left, or right along that line.  See Tyco Motion at 3-4. Tyco claims that a "latitudinal axis" is not implicated by the '286 Patent but that, in any event, a cutting surface curved along the latitudinal axis would not be a cutting surface that extended along the lengthwise dimension of the instrument and curved to the side, but rather a surface that extended along the cross-wise dimension of the instrument.  Id. at 4, Diagram B.

Ethicon responds that the Court's comments do not import a limitation not present in the claim language because the word "longitudinal" is a limitation of the claim, which the Court properly construed to mean in the "up or down" direction, and that "what [plaintiff] wants the Court to do is rewrite the claim to remove an express limitation."  Ethicon Opp. at 6.  As it did in the original claim construction phase, Ethicon also refers to the prosecution history of the patent to argue that the inventors intended a blade surface that "curved outwardly and downwardly" to improve on ultrasonic instrument technology by allowing the user to vary the force applied by the blade surface by adjusting the location of the tissue on the blade.  Id. at 10.  Ethicon cites the deposition testimony of one of the two named inventors of the patent discussing this improvement and stating he never considered a blade that curved "outward," "instead of up or down."  Id. at 11 (citing deposition of Corbett Stone, Ethicon Opp. at Ex. 1 at 144:6-8, 161:21-22).

Ethicon also addresses an argument advanced by Tyco – that because the instruments are designed to rotate and be used in multiple different orientations, there is no meaningful difference between a cutting surface that curves up and down or side to side – contending that this explanation conflicts with the language of patent, which specifies a curve along the longitudinal axis.  Ethicon compares the curved cutting surface described in the claim language to a road going straight, due North, "[i]t may go down a hill (<u>i.e.,</u> curve downward), or it may go up a hill (<u>i.e.,</u> curve upward), but it continues going straight North.  Its surface is curved <u>along the longitudinal axis</u>.  If its surface were the cutting surface of a cutting jaw, the cut it would make would be a straight line."  Ethicon Opp. at 7.  Ethicon compares a surface curving "side to side" to a road that is also going straight, due North, and then turns West, "[n]ow its surface is curving <u>away from</u> the longitudinal axis.  If its surface were the cutting surface of a cutting jaw, the cut it would make would be a curve."  <u>Id</u>.  Tyco demonstrates an alternative illustration of "water shot under high pressure from a pipe pointing upwards.  The tube of the pipe defines a longitudinal axis.  As the water exits the pipe and shoots into the air, it will curve off this longitudinal axis in any number of ways (left, right, forward, backward, etc.).  These curves are deviations along the longitudinal axis regardless of the

direction from which they deviate along this axis to from the curve." Tyco Reply [Doc. # 67] at 5 n.3. These conflicting analogies illustrate Tyco's characterization of the "longitudinal axis" as a line, rather than a plane.

The Court agrees that Tyco's illustration is more accurate and that Ethicon's comparison and arguments would import a limitation from the specifications into the construction of the claim term at issue. As the Court addressed in its Claim Construction, although the specification describes an embodiment with a cutting jaw having a blade surface curved "outwardly and downwardly" "with respect to the longitudinal axis," the Court must avoid importing limitations from the specifications into its construction of the claims, and "nothing in the intrinsic evidence requires that the cutting surface be so curved." See Claim Construction at 23-25 (citing, inter alia, '286 Patent, Abstract, 1:65-67). Indeed, the language in the Patent Abstract describing a cutting jaw with "a blade surface which is curved downwardly and outwardly in the distal direction with respect to the longitudinal axis" suggests that the surface could curve in other directions and still be along the longitudinal axis. Further, as the Court noted in its Claim Construction ruling, that the inventors used the descriptions of "outward" and "downward" in the specification suggests that they knew how to articulate that curvature if they had sought to so limit what

7

they were claiming.  Additionally, as Tyco argues, the instrument is meant to be rotated and thus whether the blade curves up, down, or to one side or the other is not static and is only defined by the perspective of the user.

Thus, the Court withdraws its comments regarding whether the blade surface could curve "side to side" as impermissible importing a limitation from the specification into the claim language.  The language of the claim provides a curve "along the longitudinal axis," and the Court's construction – "deviating from a straight line along the lengthwise dimension" – should not be read to limit that curvature to surfaces curving only up or down.[2]

### III. "Clamp Member" in the '286 Patent

Lastly, Tyco seeks amendment of the Court's construction of the term "clamp member" in the '286 Patent, which includes the limitation that the clamp member is "separate and distinct from

---

[2] For the same reason that it rejected Ethicon's arguments concerning patent prosecution history in its Claim Construction, the Court declines to consider the patent background and prosecution history here.  See Claim Construction at 25 n.10.  Additionally, the inventor testimony to which Ethicon refers could just as easily be describing a preferred embodiment as suggesting a limitation in the claim language and thus is inconclusive.  Further, while Ethicon claims that a blade that curved "side to side" would not achieve the enhanced blade force advantage described in the "Background" section of the patent, as Tyco noted at oral argument the patent also states that "[t]he curved blade surface provides better visibility at the surgical site," see '286 Patent, 4:37-38, an advantage that would be gained even if the curve was "side to side."

the tissue contact surface," arguing that the limitation is impermissibly imported from a dependent claim and is also inconsistent with the usage of the same term in the '050 Patent. Ethicon argues that there is no basis for the Court's construction of "clamp member" to be reconsidered because "the Court properly recognized that the plain language of Claim 17 requires that the 'clamp member' and the 'tissue contact surface' be separate and distinct, such that they are capable of being 'removably fastened.'" Ethicon Opp. at 3.  Ethicon contends that the portions of the specification which "describ[e] the clamp member and tissue contact member as separate, distinct parts are dispositive on this issue." Id.

While Ethicon contends that Tyco has simply "repackage[d] the same arguments it made the first time around in an attempt to persuade the Court that an error has been made," because reconsideration and amendment is appropriate where necessary to correct an error of law, the Court granted Tyco's reconsideration motion to correct any error of law.  This use of a reconsideration motion is particularly valuable in the claim construction context, where the patent claims at issue are complex and difficult and any mistake is likely to affect the outcome of the infringement determination to be made in the future.

After reviewing the claim language and specification again,

9

the Court believes that Tyco is correct that the original construction of "clamp member" was improperly limited by the language in dependent claim 17.  See Nazomi Commc'ns, Inc. v. Arm Holdings, PLC, 403 F.3d 1364, 1370 (2d Cir. 2005) ("[T]he concept of claim differentiation normally means that limitations stated in dependent claims are not to be read into the independent claim from which they depend.") (internal quotation omitted).  While the independent claims do not specifically describe the clamp member's relationship to the "tissue contact surface," it is dependent claim 17 which claims "an ultrasonic instrument according to claim 7, wherein the clamp member includes a tissue contacting surface removably fastened to the clamp member."  Thus, the Court's prior reasoning that, in order for the clamp member to be removably fastened to the tissue contacting surface, it would have to be separate and distinct from that contacting surface, imports the limitation in claim 17 into the rest of the independent claims in the patent.  As Tyco notes, there is no basis in the '286 independent claims for the "clamp member" claimed therein to be limited to a component with a removably fastened tissue contact surface, as opposed to a component including a tissue contact surface or with a permanently (i.e. not removably) fastened tissue contact surface.

Further, although the parties did not request construction of the term "clamp member" in the '050 Patent, Tyco is correct

that the Court's initial construction of this term for the '286 Patent is inconsistent with the term as used in the '050 Patent and the Court will "presume, unless otherwise compelled, that the same claim term in the same patent <u>or related patents</u> carries the same construed meaning." <u>See</u> <u>Omega Eng'g, Inc. v. Raytek Corp.</u>, 334 F.3d 1314, 1334 (Fed. Cir. 2003) (emphasis added). Because the '050 Patent discloses embodiments where the clamp member and the tissue contacting surface are made of the same part (as opposed to two separate parts removably fastened to each other), <u>see</u> '050 Patent, Figures 27, 28A, 28B, and 28C, the Court's initial construction of "clamp member" for the '286 Patent could not be applied to the '050 Patent without excluding disclosed embodiments and "a claim interpretation that excludes the device disclosed is rarely the correct interpretation." <u>See</u> Claim Construction at 35 (citing <u>Playtex Prods., Inc. v. Proctor & Gamble Co.</u>, 400 F.3d 901, 904 (Fed Cir. 2005)).

Thus, because the Court's initial construction impermissibly imported a limitation from dependent claim 17, and because the identical term in the related '050 patent should be capable of being construed to carry the same meaning, the Court amends its construction of "clamp member" in the '286 patent to: "A part configured to hold, grasp, or apply pressure to tissue, that is movable and that works with a component of the instrument (e.g. the cutting jaw)."

**IV.  Conclusion**

For the foregoing reasons, plaintiff's Motion for Reconsideration [Doc. # 64] is GRANTED and the Court's construction of the three terms disputed on plaintiff's motion is amended and/or clarified as detailed above.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton
United States District Judge

**Dated at New Haven, Connecticut this 13th day of July, 2006.**